# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

IN THE MATTER OF THE SEIZURE OF )
2016 Chevrolet Suburban 1500, )       CASE NO. 3:18-mj-00308-DMS
VIN 1GNSKJKC7GR100285 )
)

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR SEIZURE WARRANTS

I, Tyler Vose, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am an investigative or law enforcement officer of the United States, within the meaning of 18 U.S.C. § 2510(7) and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I have been a Special Agent with the Federal Bureau of Investigation (FBI) since May 2011. Since that time I have been assigned investigative responsibilities in the areas of public corruption in the Detroit and San Juan Field Offices, Indian country matters on the Pine Ridge Indian Reservation in South Dakota, and public corruption violations in the Anchorage Field Office, where I am currently assigned. The Anchorage Field Office is located within the District of Alaska. Prior to being an FBI Special Agent, I served as a Human Intelligence Collector with the United States Army 5 years and 7 months. In addition to traditional combat duties, I conducted military source operations and interrogations on suspected members of Al-Qaida and other radical Islamic terrorist/insurgent groups in Iraq.

2.      The information set forth below is based upon my knowledge of an investigation conducted by the FBI and other law enforcement agents and officers. I have not included each and every fact obtained pursuant to this investigation, and instead have only included facts sufficient to establish probable cause for the requested seizure warrants to issue.

Case 3:18-mj-00308-DMS Document 1 Filed 05/23/18 Page 1 of 41

3.      I make this affidavit in support of SEIZURE WARRANTS for the following personal

property:

        a.  2016 CHEVROLET SUBURBAN 1500, VIN 1GNSKJKC7GR100285
        b.  2016 AUDI A7, VIN #WAU2MBFC8GN014796

as property traceable to proceeds of violations of 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343

(wire fraud) (both SPECIFIED UNLAWFUL ACTIVITIES as defined 18 U.S.C. § 1956

(a)(1)(c)(7)), and 18 U.S.C. §§ 1956(h), and 1957 (money laundering), and subject to forfeiture to

the United States under 18 U.S.C. § 981(a)(1)(A), (C), and 18 U.S.C. § 982(a)(1), (a)(2).

## *LEGAL AUTHORITY*

4.      Pursuant to 18 U.S.C. § 981(a)(1)(A) (Civil Forfeiture), the following property is

subject to forfeiture to the United States:

> Any property, real or personal, <u>involved in a transaction</u> or attempted transaction
> in violation of 1956, 1957 or 1960 of this title, <u>or and property traceable to such
> property.</u>

(emphasis added).

5.      A transaction or attempted transaction in violation of 18 U.S.C. § 1957 (Engaging in

monetary transactions in property derived from specified unlawful activity), occurs when;

> (a) Whoever, in any of the circumstances set forth in subsection (d), knowingly
> engages or attempts to engage in a monetary transaction in criminally derived
> property of a value greater than $10,000 and is derived from specified unlawful
> activity.

6.      Pursuant to 18 U.S.C. § 981(a)(1), the following property is subject to forfeiture to the

United States;

> (C) Any property, real or personal, which constitutes or is derived from proceeds
> traceable to a violation of any offense constituting "specified unlawful activity" (as
> defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

7.      18 U.S.C. § 1956(c)(7),  states the term "specified unlawful activity" means—

> Any act or activity constituting an offense listed in section 1961(1)(racketeering)
> of this title.

8.  18 U.S.C. § 1961 defines "racketeering activity' to include "section 1341 (relating to mail fraud) and section 1343 (relating to wire fraud)."

9.  18 U.S.C. § 982(a) (Criminal Forfeiture) states—

(1) The court, in imposing sentencing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United states any property, real or personal, involved in such offense, or any property traceable to such property.
(2) The court, in imposing sentence on a person convicted of a violation of, or a conspiracy to violate—
   (A) … 1341, 1343…
shall order that the person forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violence.

10. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, various documents, database records, and other information. This affidavit does not set forth all of my knowledge about this matter, but rather is drafted for the purpose of establishing probable cause for the requested warrants to issue.

## *DEFINITIONS*

11. The following definitions pertain to the United States Automobile Association Federal Savings Bank ("USAA") insurance policies held by the DeMures, which are relevant to this affidavit:

a.  "Homeowner's Insurance" is an insurance policy that USAA offers that covers losses and damages to an individual's house and to assets inside the home.

b.  "Renter's Insurance" is a type of insurance policy that USAA offers that can include the replacement cost of nearly every item inside a rental property, and in most cases is not limited to the insured's residence.  For example, if an insured's car is broken into

Case 3:18-mj-00308-DMS Document 1 Filed 06/25/23 Page 4 of 41

and a laptop is stolen from that vehicle, renter's insurance would cover it in most cases.

c. "Umbrella Personal Protection" (UPP) is a USAA insurance policy that covers additional items of personal property that are not covered by an insured's auto insurance, home, or renter's insurance, or boat insurance.

d. "Valuable Personal Protection" (VPP) is a USAA insurance policy designed to cover specific items of jewelry, silverware, fine arts, coins, cameras, guns, stamps, furs, and musical instruments. Most electronics are not covered by VPP. Bicycles are not covered by VPP. In order to receive VPP coverage for an item, an appraisal and/or bill of sale normally must be provided to USAA.

e. "Recoverable Depreciation" is money that USAA withholds from initial payouts on insurance claims until the insured replaces a particular item that the insured claims was lost, misplaced, or stolen is replaced, and provides proof to USAA that they have replaced the item at issue.

f. "USAA online claim system" or "USAA system" is an online/internet-based messaging system that allows USAA insureds to exchange messages with USAA employees, including claim representatives. To send or receive messages on the system, USAA insureds must log in to their USAA account with a password specific to their account.

g. "USAA claim notes" refer to both USAA online claim system communications between the USAA insured customer and USAA claim representatives, as well as internal comments written by USAA claim representatives regarding a specific claim. Only USAA employees can view the internal comments.

Case 3:18-mj-00308-DMS Document 1 Filed 06/25/23 Page 4 of 41

12.     The following definition pertains to American Express ("AMEX") insurance policies held by the DeMures, which is relevant to this affidavit. Specifically, "Purchase Protection Benefit" is associated with AMEX's purchase insurance program, which covers items purchased on AMEX credit cards. Each AMEX credit card has a per-claim – or Purchase Protection Benefit – limit of $10,000, and a yearly maximum claim limit of $50,000 per credit card. When AMEX approves a card holder's purchase insurance claim, AMEX electronically places a credit on that particular AMEX credit card.

## *PROBABLE CAUSE*

13.     Chris DeMure is a United States Army officer with the rank of Lieutenant Colonel (O-5), currently assigned as the Battalion Commander of the 3rd Battalion, 509th Infantry (ABN). Chris DeMure graduated from West Point Military Academy in May 2000. He has served in several capacities within the regular Army and the special operations community. Chris DeMure recently returned to Joint Base Elmendorf-Richardson, Alaska, following a deployment to Afghanistan where he was in command of a task force of approximately 2,200 personnel.

14.     Tina DeMure is Chris DeMure's spouse. The couple has been married throughout the scheme to defraud described herein. Tina DeMure is a nurse by training, is believed to work at a medical office in Anchorage, and resides on Joint Base Elmendorf-Richardson.

15.     USAA Checking account ending in 0186, which is referenced below, is the bank account into which the USAA insurance claim payments were deposited. This joint account was controlled by Chris DeMure and Tina DeMure. The joint account was opened online on December 23, 2010.

16.     No later than approximately March 2008, and continuing until at least until February 20, 2018, Chris DeMure and Tina DeMure engaged in a scheme to defraud two insurance providers by submitting false and fraudulent insurance claims for items that the DeMures claimed had been

*3:18-mj-00308-DMS*                    5 of 40

LCL

lost, stolen, or destroyed, in violation in violation of 18 U.S.C. § 1341 (Mail Fraud) and 18 U.S.C.

§ 1343 (Wire Fraud). The DeMures used proceeds from their scheme to defraud to purchase, among

other items, a 2016 Chevrolet Suburban and a 2016 Audi A7, in violation of 18 U.S.C. §§ 1956(h),

1957 (Money Laundering). To date, this investigation has shown that the DeMures' fraudulent

insurance claims with USAA Federal Savings Bank (USAA) and American Express (AMEX) sought

insurance payments in the amount of approximately $475,000, and that the DeMures actually

received approximately $394,000 from USAA and AMEX combined as a result of their claims

### *THE SCHEME TO DEFRAUD*

17. The Purchases. The DeMures purchased items of value such as jewelry, high-end

bicycles, clothing, and electronics. Some of those purchases were made online, and some were made

in person. At times, the DeMures would cancel the online order or physically return the item for a

full refund to the store where it was originally purchased, but nevertheless later include the returned

item on a fraudulent insurance claim with USAA and/or AMEX, claiming that the item was lost,

misplaced, and/or stolen.

18. The Claims. Before 2014, the DeMures only filed fraudulent insurance claims with

USAA. Thereafter, they filed fraudulent insurance claims with both USAA and AMEX. During that

time, the DeMures' USAA policies included homeowners, renters, valuable personal property (VPP),

and umbrella personal protection (UPP) insurance. Their AMEX coverage was purchase protection

for specific items purchased with his AMEX cards. Since 2014, the DeMures has had multiple

AMEX credit cards. Additionally, beginning in approximately October 2015, the DeMures began to

file parallel fraudulent insurance claims for certain items with both USAA and AMEX. That is, the

DeMures filed fraudulent insurance claims for many of the same items with AMEX and USAA. In

some cases, the DeMures provided different explanations for the loss, misplacement, or theft of these

LCL

Case 3:18-mj-00308-DMS Document 1 Filed 05/23/18 Page 7 of 41

items on the claim they filed with AMEX and the claim they filed with USAA. The DeMures have communicated with USAA and AMEX via email.[1]

19.     Supporting Documentation. The DeMures submitted documentation in support of the insurance claims he made with both USAA and AMEX. As further detailed below, this investigation has shown that some of the documents they submitted were fraudulent (*e.g.*, a document that purported to be report from the Palmer Police Department (Palmer PD) in Palmer, Alaska, which Palmer PD has confirmed is not a Palmer PD report). In addition to providing the aforementioned documentation, in some cases, the DeMures provided USAA and/or AMEX with written and/or verbal narratives of the circumstances of the claimed loss, which this investigation has shown were partially or entirely fraudulent.

20.     Recoverable Depreciation. As discussed above, before USAA would release the Recoverable Depreciation for items listed on a claim, the DeMures were required to purchase like or similar items and provide proof that he had done so to USAA. In many instances, the DeMures purchased similar items, obtained a purchase confirmation/receipt to provide to USAA, and then cancelled the order. The DeMures would then provide this purchase confirmation/receipt to USAA to obtain the Recoverable Depreciation, without disclosing to USAA that they had already returned the replacement item. The purchase confirmation/receipt that the DeMures submitted to USAA would cause USAA to release the Recoverable Depreciation that was specific to that item.

21.     The Payouts. Of the approximately $475,000 the DeMures claimed from USAA and AMEX altogether via their fraudulent claims, the DeMures has received approximately $394,000 in

---

[1] This investigation has revealed a number of email accounts that are or have been associated with Chris DeMure and/or Tina DeMure, namely: tinademure@yahoo.com; ctdemure@gmail.com; christopher.j.demure.mil@mail.mil; chris.demure@soc.mil; chrisdemure@yahoo.com; chris.demure@us.army.mil; cdemure@aol.com; tmdemure@yahoo.com;christopherdemure@hotmail.com; tdemure1@yahoo.com; and tmguzik@yahoo.com.

*LCL*

insurance payout/reimbursements from both companies. As discussed below, the $394,000 the DeMures received in payouts from USAA and AMEX included payments for claims that this investigation has shown to be fraudulent, either in whole or part.

22.     <u>Proceeds.</u>  This investigation has shown that the DeMures have spent much of the payout money that he obtained through the scheme to defraud to pay down automobile loans, credit cards, mortgage loans, and other personal debts and expenses, including the 2016 Chevrolet Suburban and a 2016 Audi A7 described above.

<u>*EXEMPLATIVE FRAUDULENT INSURANCE CLAIMS*</u>

23.     In the paragraphs that follow, several of the insurance claims the DeMures filed with USAA and/or AMEX, and which this investigation has shown were fraudulent, are detailed.

<u>*U-Haul Burglary – July 20, 2016 – Louisville, Kentucky*</u>

24.     On July 13, 2016 (seven days before the purported U-Haul burglary), Livingston Storage & Transfer Co., Inc., completed the pack up of the DeMures' residential household goods in Fort Benning, Georgia.  This was a tax-payer funded permanent change of station arranged through the United States Army for Chris DeMure and his family to move from Fort Benning to Joint Base Elmendorf-Richardson in Alaska.  The household goods that Livingston Storage & Transfer Co., Inc., packed for the DeMures arrived, and were unpacked at Joint Base Elmendorf-Richardson in August 2016.

25.     On July 21, 2016, Chris DeMure notified USAA that the U-Haul trailer he had rented had been burglarized in a hotel parking lot the day before (*i.e.*, July 20, 2016) in Louisville, Kentucky.

26.     On July 22, 2016, Chris Demure filed a police report with the Louisville Metro Police Department (Louisville Metro PD), related that he had been burglarized two days earlier  (i.e., July

20, 2016), and estimated the loss amount to be $215,317.68. The Service Center Technician at the Louisville Metro PD who took Chris DeMure's complaint on July 22, 2016, recalled that Chris DeMure said he and his family were staying at a hotel in the Louisville area, they were in the process of moving, and that he was in the military. The representative further recalled Chris DeMure claiming the items were stolen from a trailer that was being towed. The Louisville Metro PD representative explained to Chris DeMure that the Louisville Metro PD does not usually take theft reports exceeding $10,000 over the telephone, but made an exception for him because he was in the process of moving and only passing through Louisville. As such, no police officer responded to the scene to verify that Chris DeMure's U-Haul trailer was broken into and its contents were gone as he reported. The representative opined that the area where Chris DeMure claimed his trailer was broken into was in a good area of Louisville with very little crime.

27.     Six Continent Hotels, the parent company of Staybridge Suites, confirmed the DeMures stayed at the Staybridge Suites in Louisville, KY, on July 20, 2016. Additionally, U-Haul confirmed the DeMures rented a U-Haul trailer in Columbus, GA, on July 18, 2016 and returned it in Crown Point, IN, on July 22, 2016. (The DeMures have family in the Crown Point, Indiana, area.) The details of this one-way U-Haul rental were scheduled on July 8, 2016, suggesting the DeMures had prior intention to terminate the U-Haul rental over 3,000 miles short of their new military posting in Alaska. At that time, Chris DeMure was permanently changing duty stations from Fort Benning, GA, to Joint Base Elmendorf-Richardson (Joint Base Elmendorf-Richardson), AK.

28.     On July 22, 2016, Chris DeMure wrote a message on the USAA system stating the following:

> "I am currently gathering the complete inventory of items – it essentially the majority of our clothes, shoes, etc. (we generally travel with all of our clothes since the moving truck doesn't arrive for a little while), the two bikes, jewelry, etc. I spoke to the Louisville Police Department and they have started a police report…

Case 3:18-mj-00308-DMS *SEALED* Document 1 Filed 05/23/18 Page 9 of 41

I am working with of [*sic*] their officers and will ensure their police report has a complete inventory of the missing items."

29.    USAA broke down the DeMure's claim into 11 distinct categories: clothing & accessories; computers & related goods; electronics; furniture-home & office; health & medical supplies; housewares-home décor; infant & baby related goods; jewelry & watches; linens & soft goods; luggage, bags & accessories; and sporting goods & outdoors. USAA divided the total claim into two separate claims: (1) jewelry; and (2) non-jewelry items (everything else). These claims are discussed in turn below.

### *Louisville U-Haul Burglary - Jewelry*

30.    USAA records show that the DeMures increased their USAA VPP coverage between April 2016 and July 18, 2016. Specifically, in April 2016, the DeMures held approximately $60,000 in VPP coverage. By July 18, 2016, the DeMure's total VPP coverage amount had increased to approximately $198,000 and covered 20 VPP items, to include many of the pieces of jewelry that the DeMures claimed were stolen from a U-Haul trailer on July 20, 2016, in Louisville, Kentucky, as further described below.

31.    On September 20, 2016, the DeMures submitted a detailed accounting of all the jewelry that was supposedly stolen from the U-Haul trailer at the Staybridge Suites in Louisville, Kentucky on July 20, 2016.

32.    On November 3, 2016, USAA Claims Representative Travis Robbins sent a message to the DeMures via the USAA system stating: "we have almost got everything in line for settlement." Robbins also requested additional paperwork and photographs for some of the jewelry. That same day, Chris DeMure responded he would check with the jeweler in Columbus, GA.

33.    On November 11, 2016, USAA Claims Representative Eric Pogue sent a message to the DeMures via the USAA system stating: "In order to provide proof of ownership of the items, we

LCL

Case 3:18-mj-00308-DMS   Document 1   Filed 06/25/23   Page 10 of 41

request copies of the original appraisals. If these are not available to you, you can provide photos of the item, an original purchase receipt for the items, or photos."

34.     On several occasions thereafter, the DeMures were requested to provide further documentation by a variety of USAA claims representatives. On November 17, 2016, Chris DeMure responded "a good amount of my paperwork was stolen from the u-haul [*sic*] trailer during the theft."

35.     Among other things, Chris DeMure provided USAA with a copy of a June 15, 2016, appraisal from The Jeweler's Touch in Columbus, Georgia, for:

> "One (1) lady's 'Tiffany & Co.' domed mesh necklace in 18kt white gold weighing approximately 88.8 grams and measuring approximately 16 inches in length. At the front of the necklace are three (3) strands containing ninety-nine (99) natural round brilliant cut diamonds measuring approximately 2.5mm and weighing approximately 0.06 Ct(s) each, Color – F-G, Clarity – VS1-VS2 and six (6) natural round brilliant cut diamonds measuring approximately 2.4mm each and weighing approximately 0.05 Ct(s) each, Color – F-G, Clarity VS1-VS2. The necklace has an approximate total carat weight of 6.24 Ct(s)."
> (hereinafter "the Tiffany & Co. mesh necklace").

36.     On November 22, 2016, USAA Claims Representative Robbins wrote on the USAA system, "Hey Colonel…the contact we work with at Tiffany's has not been able to locate the original order and they have traced back all the way to 1995. Do you have the order information or was this purchased under a different name?"

37.     On November 23, 2016, Chris DeMure replied:

> "Travis, The last name was Dombrowski (that is my wife's grandmother who we inherited from), but I'm not sure how she acquired it or if she purchased it from someone else. Please let me know if you need the appraisals. I can get those from the jewelry store in Columbus, GA where we got the items appraised."

38.     Records obtained from Ross-Simons Jewelers -- a retailer with an online store, catalog sales, and stores in Rhode Island, Massachusetts, New Jersey, and Delaware -- show that, on June 1, 2016, Chris DeMure purchased a Tiffany & Co. necklace matching the description of the Tiffany & Co. mesh necklace for $16,496.25. The necklace was described in Ross-Simons records as "PLAT/18KW TIFFANY&CO 3-STRAND MESH NECK."

LCL

39.     On June 15, 2016, according to business records obtained from The Jeweler's Touch in Columbus, Georgia, The Jeweler's Touch appraised the Tiffany & Co. mesh necklace at Chris DeMure's request and concluded that its appraised value was $35,000.

40.     On July 6, 2016, Chris DeMure returned the Tiffany & Co. mesh necklace to Ross-Simons jewelers for a full refund, claiming that his wife did not like it. (Chris DeMure told USAA that the Tiffany & Co. mesh necklace was stolen from his U-Haul in Louisville, Kentucky, on July 20, 2016, that is, 14 days after Chris DeMure had returned the Tiffany & Co. mesh necklace for a full refund.)

41.     On July 11, 2016, the DeMures added the Tiffany & Co. mesh necklace to his VPP coverage, that is, nine days before the purported U-Haul burglary in Louisville, Kentucky.

42.     On November 28, 2016, Chris DeMure submitted the $35,000 appraisal from The Jewelers Touch in Columbus, Georgia, for the Tiffany & Co. mesh necklace via the USAA system.

43.     On January 2, 2017, USAA Claims Representative Robbins notified Chris DeMure of the following:

> "Colonel, I wanted to let you know I have gotten responses on all items with exception to the eternity ring we are still waiting on verification on that ring. The only other issue we are running into is with the Tiffany Necklace. Since we have a direct relationship with Tiffany and Co we try to see if the item is still available. They are not showing any item matching the description for the necklace in their catalog history nor are they able to find the purchase history itself. I had the gemologist come up with a price for replacement as if this was not a Tiffany and Co item."

44.     Shortly thereafter, Chris DeMure responded to USAA Claims Representative Robbins via the USAA system with the following: "Regarding the necklace, I know the appraiser mentioned it said Tiffany & Co on the piece; however, this originally belonged to my wife's grandmother so I know it is definitely a vintage/antique piece of jewelry." (As noted above, Chris DeMure purchased

LCL

Case 3:18-mj-00308-DMS   Document 1   Filed 06/25/23   Page 12 of 41

this necklace on June 1, 2016, from Ross-Simons Jewelers and returned it for a full refund on July 6, 2016.)

45.     The DeMure's USAA claim from the July 20, 2016, Louisville U-Haul burglary also included a second Tiffany & Co. necklace.

46.     The DeMures provided USAA with a copy of a June 15, 2016, appraisal from The Jeweler's Touch in Columbus, Georgia, for: "One (1) lady's fashion 'Tiffany & Co.' teardrop shaped dangle filigree style pendant attached to a 16.25 inch chain in platinum weighing approximately 5.29 grams . . . contain[ing] . . . [t]wenty-five (25) natural round dingle cut diamonds weighing approximately 0.25 Ctw, Color – G, Clarity – VS2" (hereinafter "the Tiffany & Co. teardrop necklace").

47.     Records the FBI obtained from Ross-Simons jewelers show that Chris DeMure purchased a "PLAT TIFFANY & CO DIAMOND TEAR DROP NECK" on June 1, 2016, from Ross-Simons jewelers for $5,996.25.

48.     On June 15, 2016, according to business records obtained from The Jeweler's Touch in Columbus, Georgia, The Jeweler's Touch appraised the Tiffany & Co. teardrop necklace at Chris DeMure's request and concluded that that the appraised value of this necklace was $3,500.

49.     On July 6, 2016, Chris DeMure returned the Tiffany & Co. teardrop necklace to Ross-Simons for a full refund, claiming his wife did not like it according to Ross-Simons business records.

50.     On July 18, 2016, the DeMures added the Tiffany & Co. teardrop necklace to their VPP coverage, that is, two days before the purported U-Haul burglary in Louisville, Kentucky.

51.     In January 2017, USAA Claims Representative Robbins sent the DeMures a detailed settlement valuation for six pieces of jewelry totaling $90,014. The Tiffany & Co. mesh necklace discussed above was not included in that estimate because: (1) USAA had been unable to verify its purchase and value with Tiffany & Co.; and (2) a USAA gemologist's valuation of the Tiffany & Co.

*3:18-mj-00308-DMS*                    13 of 40

LCL

mesh necklace at $17,000 rather than the appraised value of $35,000 per the documents submitted by

Chris DeMure.

52. On January 23, 2017, USAA closed this claim due to the lack of response from the

DeMures on the USAA system.

53. Later the same day, Chris DeMure wrote a reply to USAA Claims Representative

Robbins on the USAA system:

> "Travis, I just returned from the Northern Mountain Training Center last
> night…Just saw the email that the claim has been closed and it was also not
> available when I went to USAA's website.  Honestly, I am surprised that you guys
> did not call <u>my phone or my wife's phone; she had both while I was TDY</u>."

(emphasis added).

54. On January 25, 2017, Chris DeMure sent USAA Claims Representative Robbins the

following message over the USAA system:

> "Travis, please let me know if it is easier to discuss on the phone, but here are the
> key points: 1) There are numerous items on the police report that were not included
> in the six items you quoted.  Specifically, it should be Tacori earrings ($995),
> Mikimoto 18" pearl necklace ($3500), Lady's octagon stud earrings ($2500), and
> Tiffany&Co teardrop filigree pendant ($3500.) 2) For the six items you mentioned,
> I did have a couple questions: - 16" chain with marquise diamonds: no issues
> ($18,463.92) – Omega black earrings: no issues ($4995.00) – Lady's eternity ring:
> No issue with the "round cut" for $20,636.02. – Lady's halo style pendant and
> chain. Can you confirm this price of $8064.76? (The item had a 1.50 ct diamond
> and I have not found anything similar for under $15K.) – Lady's eternity ring
> (asscher cut.) I believe this was originally purchased for somewhere near $35K.  I
> have asked a number of reputable jewelry stores and I have not received a quote
> for under $38,000.  I'm curious as to why it would only be $20,854.30, especially
> when it was appraised for twice as much and a number of other appraisers and
> jewelers estimate it much higher. – For the Tiffany necklace, this was an inherited
> piece on my wife's side.  According to her family members, it was purchased in
> the 1950s or 1960s, well before the 1995 benchmark that the Tiffany rep mentioned.
> If you need additional last names, I can provide them; however, there is no question
> that it was purchased well before 1995."

55. Later the same day, USAA Claims Representative Robbins responded to Chris

DeMure via the USAA system: "As far as the Tiffany [mesh] necklace I will send the information

LCL

Case 3:18-mj-00308-DMS   Document 1   Filed 05/23/23   Page 14 of 41

back to the gem lab but they did contact Tiffany's and they have no record of the purchase, and they also stated they don't have anything in their inventory similar to this, but that may be due to the age."

56.     On February 6, 2017, Chris DeMure wrote to USAA Claims Representative Robbins via the USAA system:

> "Travis, Apologize for the delay – it has been an insane week, as we ramp for deployment to Afghanistan.  Regarding potential names, here are a few on my wife's side.  Her grandmother has passed away, but there are potential names of other family members.  That particular piece was certainly purchased well before 1995: Guzik, Dombrowski, Johnson, Phillips, Peterson, and Barnes."

57.     Between February 28, 2017, and March 3, 2017, Robbins and Chris DeMure traded messages via the USAA system regarding the vintage Tiffany & Co. necklace.  Robbins confirmed they could not verify the names provided by Chris DeMure due to privacy concerns and would only pay out the USAA gemologist's appraised value of $17,000 rather than the appraised value submitted by Chris DeMure for $35,000.  Chris DeMure eventually agreed, and requested a final disbursement amount.

58.     On March 6, 2017, USAA sent an email with an itemized description of the final settlement for $100,509 to ctdemure@gmail.com.

59.     FBI interviewed USAA Manager Susan Simons.  Simons confirmed USAA Check number 0017854022 in the amount of $100,509 was issued as a paper check and mailed to the DeMures.  Additionally, USAA bank records indicated that the aforementioned paper check in the amount of $100,509 was deposited into the DeMure's joint checking account ending in 0186 on March 28, 2017.  The deposit was listed as "MAIL DEPOSIT."

### *Louisville U-Haul Burglary - Non-Jewelry Items*

60.     In addition to the jewelry claim submitted to USAA for the July 20, 2016, Louisville U-Haul burglary, the DeMures claimed a variety of non-jewelry items were stolen from the U-Haul

Case 3:18-mj-00308-DMS   Document 1   Filed 05/23/23   Page 15 of 41

trailer, as well. Those items included such things as men's/women's suits, various clothing, household goods, electronics, two Cervelo bicycles, and other items.

61.    On August 17, 2016, Chris DeMure wrote a message to a USAA claims representative via the USAA system stating in part: "I finally made it to Alaska…For your awareness, we moved with a large amount of our clothes in bags in the trailer." (As noted above, U-Haul records show that Chris DeMure reserved a U-Haul trailer only for a one-way trip between July 18, 2016, and July 22, 2016, from Columbus, Georgia, to Crown Point, Indiana, not to Joint Base Elmendorf-Richardson in Alaska. The DeMures have family in the Crown Point, Indiana, area.) Review of the DeMure's bank account and credit card statements of this time period does not indicate that the DeMures rented any other moving trailer or moving vehicle to travel from Indiana to Alaska in July or August 2016.

62.    As noted above, on July 13, 2016 (seven days before the purported U-Haul burglary), Livingston Storage & Transfer Co., Inc., completed the pack up of the DeMure's residential household goods in Fort Benning, Georgia. On the inventory of items that Livingston Storage & Transfer Co. packed for Chris DeMure and his family, at least two bicycles were noted: (1) "Bike – Red – Man's Cervelo 12SP"; and (2) "Racing bike (Felt tri bike)." On July 21, 2016, in support of their claim, Chris DeMure sent what appeared to be an invoice/appraisal for two bicycles from a company known as Barnes Competitive Cycling. An image of that document appears below:

//

//

//

//

//

//

Case 3:18-mj-00308-DMS Document 1 Filed 06/25/23 Page 16 of 41



**Barnes**

**Competitive Cycling**

7322 Trails End Ave
Schererville, IN 46375
Phone 219-865-6030

INVOICE # 16-273
DATE April 23, 2016

TO
Chris DeMure
103 Miller Loop
Fort Benning, GA 31905
Phone 910-578-8537 | ctdemure@gmail.com

FOR Bike Tuning / Appraisal

| Description | Amount |
|---|---|
| **54mm Cervelo P5 (2015) Triathlon Bike (Figure 1)** | $11,000.00 |
| - Dura Ace Di2 9070 components; 3T Aduro stem; Rotor FLOW BBright Aero (52/36) Crankset, Magura RT8 brake levers; Magura RT8 Hydraulic brake calipers | |
| - HED Jet 6 Plus front and rear wheels | |
| - Bike is in excellent condition and stamped with the following information: SNP5C15B00689 | |
| **54mm Cervelo S5 (2016) Road Bike (Figure 2)** | $10,000.00 |
| - Shimano Dra-Ace Di2 9070 11-speed front and rear derailleurs, shifters, cassette; Rotor 3D+ BBrightTM (52/36) crank; fi'zi:k Antares saddle; FSA OS-99CSI stem | |
| - HED Jet 6 Plus SCT front and rear wheels | |
| - Bike is in excellent condition and stamped with the following information: SN55C16C00137 | |
| Total | **$21,000.00** |

THANK YOU FOR YOUR BUSINESS!!

63. FBI conducted a business entity search for "Barnes Competitive Cycling" on the State of Indiana's Secretary of State webpage. No records of a business with this name were found. Additionally, a search using the same webpage for the address listed on the invoice/appraisal (7322 Trails End Ave, Schererville, IN 46375), returned one result: a hospitality business – AMJ Hospitality -- registered to Chris DeMure's brother-in-law, which has no known relation to "Barnes Competitive Cycling." AMJ Hospitality is now registered to Chris DeMure's brother-in-law, Kenneth Barnes, in Texas, where Barnes is believed to reside. (Note also that Chris DeMure has indicated in correspondence with USAA that the name Barnes is a family name on his wife's side.)

64. FBI also conducted basic background research on the address listed in the above invoice/appraisal and found that 7322 Trails End Avenue, Schererville, IN, 46375, was the residence of Tina DeMure's sister, Jennifer Barnes (hereinafter "Jennifer") and her husband Kenneth Barnes

LCL

(hereinafter "Kenneth", collectively "the Barnes"). The Barnes resided at the aforementioned address from July 2013 through July 2016, which covered the date listed on the above referenced invoice/appraisal (April 23, 2016) that Chris DeMure provided to USAA in support of his claim.

65.     Review of the bicycle company Cervelo's webpage reveals that the bicycles that the company designs and sells include performance triathlon bicycles.

66.     FBI interviewed Owen Gerard, a warranty customer service representative with the bicycle company, Cervelo. Gerard advised that the serial numbers listed in the above invoice/appraisal were not found in Cervelo's database. Gerard explained that the Cervelo bicycles with those serial numbers were not sold in North America, but could have been sold in Europe or Asia. Gerard also noted all retailers of Cervelo bicycles in North America and Europe are listed on the company's Website under "Retailers". "Barnes Competitive Cycling" is not listed on the Cervelo Website as a retailer. Finally, the invoice/appraisal described the Cervelo bicycles in millimeters ("mm"), when the bicycle industry customarily describes bicycles using centimeters ("cm").

67.     A search warrant of ctdemure@gmail.com returned an email in which Chris DeMure utilized the same incorrect verbiage when referencing the size of his bicycle. Specifically, in an email sent on August 15, 2017, Chris DeMure referred to the size of his bicycle in millimeters ("mm") rather than the bicycle industry standard of centimeters ("cm").

68.     On September 21, 2016, Chris DeMure submitted documentation for additional non-jewelry items from the reported U-Haul burglary incident in Louisville, Kentucky.

69.     On October 3, 2016, a USAA claims representative wrote to the DeMures via the USAA system: "Chris, I have uploaded the replacement cost estimate for the items that were stolen." The same day, Chris DeMure replied stating in part, "Out of curiosity, do I receive the depreciation amount when I show future purchases of similar items?" Shortly thereafter, the USAA

Case 3:18-mj-00308-DMS Document 1 Filed 06/25/23 Page 18 of 41

reply was, "Yes sir, Colonel DeMure. This is exactly right, as you replace the items you send in the receipts and we will reimburse you. We can issue payment to you for $31,477.34. Would you like us to issue payment by electronic funds transfer into your account with that last four digits of 2524?" Chris DeMure replied, "Please go ahead and issue payment. [I]f possible, I would like to deposit it in my primary checking account; the last four numbers are 0186." Records from USAA confirm that the DeMure's have a USAA bank account that's last four numbers are 0186.

70.    On October 4, 2016, USAA sent an email to ctdemure@gmail.com, which contained a letter notating the non-jewelry settlement amount of $31,477.34. The letter confirmed the payment was made by USAA to the DeMures via electronic funds transfer.

71.    As noted above, USAA advised that to obtain Recoverable Depreciation value for an item Chris DeMure had to replace the non-jewelry items that were reported stolen with similar items and provide proof he had done so before USAA would pay him the applicable Recoverable Depreciation for each item.

72.    In support of the Recoverable Depreciation reimbursement for the two Cervelo bicycles discussed above, the DeMures purchased replacement bicycles from TriSports.com and R&A Cycles.

73.    Records from TriSports.com show that on July 4, 2017, the DeMures ordered one Argon bicycle from TriSports.com for $14,882.98 (including shipping charges).

74.    On July 5, 2017, the TriSports.com purchase order was cancelled with a reason "customer changed mind." The DeMures were not charged for that purchase.

75.    On July 12, 2017, the DeMures submitted the TriSports.com purchase confirmation from July 4, 2017, to USAA to support a Recoverable Depreciation payment of $8,500 for the replacement bicycle without disclosing to USAA that they had cancelled the order on July 5, 2017.

Case 3:18-mj-00308-DMS Document 1 Filed 06/25/23 Page 20 of 41

76.     On July 4, 2017, the DeMures also ordered one Pinarello bicycle and associated gear from R&A Cycles for $17,594.99.

77.     Philip Cabbad, Senior Advisor for Sales and Products, R&A Cycles, examined the R&A Cycles invoice reflecting a purchase by Chris DeMure of a bicycle. Cabbad advised as follows:

> "We received a subpoena in the mail the other day in reference to a purchase supposedly made by a Christopher James DeMure. Looking over our online system in reference to the charge in question and verifying with our payment service. There was NO charge in the amount indicated on the subpoena. Yes, an order was placed on our website for the items mentioned but in looking over the system, the charge was VOIDED. No order was placed or shipped."

78.     On July 12, 2017, Chris DeMure submitted the aforementioned R&A Cycles invoice to the USAA system to support the Recoverable Depreciation payment of $9,000. Chris DeMure did not disclose to USAA that the purchase of the bicycle was voided.

79.     On July 13, 2017, USAA emailed the DeMures and notified him of an electronic funds transfer payment to him in the amount of $19,754.98 for Recoverable Deprecation for the non-jewelry items purportedly stolen on July 20, 2016, from the U-Haul trailer. On July 14, 2017, the $19,754.98 was deposited into the DeMures' USAA bank account ending in 0186.

80.     Another item that the DeMures claimed was stolen on July 20, 2016, from the U-Haul trailer was a MacBook Air (11-Inch) bearing serial number: C02QT2SWGFWN. This particular computer was connected to Chris DeMure's Apple iCloud account on April 24, 2016.

81.     Business records from Apple Inc. show that this same MacBook Air computer accessed Chris DeMure's Apple iTunes account on an IP Address that was assigned to Chris DeMure's address at Joint Base Elmendorf-Richardson, between January 1, 2018, and January 29, 2018 – that is, IP Address 216.67.15.150.

Case 3:18-mj-00308-DMS Document 1 Filed 06/25/18 Page 20 of 41

82.     In addition to filing claims with USAA related to the purported July 2016 U-Haul burglary, the DeMures also filed a parallel claim for some of the items that they claimed were stolen during that incident with AMEX.

83.     On the AMEX claims, the DeMures listed the date of loss associated with the U-Haul burglary as July 21, 2016 (*i.e.*, not July 20, 2016, as he had with the USAA claims). As noted above, Chris DeMure reported the U-Haul burglary to Louisville Metro PD on July 22, 2016.

84.     Between September 22, 2016, and October 18, 2016, the DeMures sent at least six separate faxes to AMEX, ranging from two pages to 37 pages in length, seeking Purchase Protection Benefit reimbursement for several of the items reported stolen from the U-Haul in Louisville, Kentucky. The total amounts claimed for the DeMures AMEX cards were: (1) AMEX card ending in 11000 - $9,990.70; (2) AMEX card ending in 11000 - $2,048.37; (3) AMEX card ending in 71003 - $1,006.41; (4) AMEX card ending in 03009 - $10,288.90; and (5) AMEX card ending in 41006 - $10,699.98.

85.     The total amount the DeMures received from AMEX for claims from the U-Haul trailer incident in Louisville, Kentucky, was $31,598.41.

86.     Altogether, the DeMures received an overall payment benefit of $183,339.73 from the claims he filed with USAA and AMEX related to the purported July 2016 Louisville U-Haul burglary.

### *Missing/Stolen Bag(s) – July 9, 2017 – Palmer, Alaska*

87.     On July 11, 2017, Chris DeMure called the Palmer Police Department (Palmer PD), in Palmer, Alaska, and spoke with a Palmer PD Dispatcher. Chris DeMure reported that two days earlier – that is, July 9, 2017 – he had left a red colored The North Face backpack in the Fred Meyer parking lot with several items inside, including an Apple iWatch and jewelry. During the initial recorded call, Chris DeMure referred to himself as being in the military, identified his rank, and

LCL

Case 3:18-mj-00308-DMS ALL Document 1 Filed 05/23/23 Page 21 of 41

mentioned his other military activities on multiple occasions. When asked for an estimated loss amount related to valuables in the bag, Chris DeMure estimated it to be a couple thousand dollars. Chris DeMure told the Palmer PD dispatcher that his insurance company was USAA. (For clarity's sake, the DeMures never filed this incident claim with USAA, only with AMEX.)

88.     Later in the day, after leaving a message on Chris DeMure's phone, Palmer PD Officer Virginia Calvert received a call back from Chris DeMure. That call was recorded. In his conversation with Officer Calvert, Chris DeMure made reference to his being in the military, his rank, and other military activities.

89.     In his calls with Palmer PD, Chris DeMure referred to a misplaced bag (not bags, plural), which he described as a small backpack that contained "not a whole lot" and "nothing of huge value." Additionally, in speaking with Palmer PD Officer Calvert, Chris DeMure went on to summarize the contents of the backpack to Palmer PD as being an iWatch, kids clothes, a men's jacket, a casual bracelet, and "a couple things like that."

90.     F BI interviewed Officer Virginia Calvert and provided her with a copy of the purported Palmer PD report that the Chris DeMure submitted to AMEX to support their insurance claim. A screenshot image of the document Chris DeMure submitted to AMEX is set forth below:

//

//

//

//

//

//

//

LCL

Case 3:18-mj-00308-DMS Document 1 Filed 06/25/23 Page 22 of 41

## Palmer Police Department
423 S Valley Way
Palmer, Alaska 99645
(907-746-9407)

STATEMENT OF PROPERTY LOSS (Report # 17-3725)

Date of Loss: July 9, 2017

Reporting Individual:

Christopher James DeMure
1210 Tomahawk Drive
Joint Base Elmendorf-Richardson, Alaska 99505
(910) 578-8537

Vehicle:

2016 Chevy Suburban
Black; VIN 1GNSKJKC7GR100285

Details of Loss:

*** Items in attached document were placed in a bag as Mr. DeMure and his family were travelling. As they stopped at the Fred Meyer (535 West Evergreen Avenue, Palmer), they rearranged the bags in the back of their SUV. The bag with missing items was accidentally set outside and not loaded back into the vehicle. After they drove away, the bag was taken by another party and not able to be recovered. ***

Officer Z. Calvert
zcalvert@palmerpolice.com
907-745-4811

91.  Among other things, Officer Calvert advised that Palmer PD did not generate a police report related to Chris DeMure's calls on July 11, 2017, and that she was not the author of the document that Chris DeMure provided to AMEX. Officer Calvert identified several additional things about the document that Chris DeMure submitted to AMEX: (1) Officer Calvert's name is Virginia Calvert, not "Z. Calvert," and Officer Calvert confirmed that there was no "Z. Calvert" working for Palmer PD on July 11, 2017; (2) the phone number noted on the letterhead (redacted in the image above) is Officer Calvert's direct desk telephone number, which is not listed on Palmer PD letterhead; (3) Officer Calvert stated that all Palmer PD reports contain a Palmer PD blue seal, which this document does not bear; (4) the report number listed on the document is not a valid Palmer PD report number, reiterated that no police report was written related to Chris DeMure's calls regarding this incident, and that the number listed on the document Chris DeMure provided to

AMEX is the incident or log number associated with Chris DeMure's call to Palmer PD (*i.e.*, Palmer PD does not generate a report for every call they receive); (5) Calvert was unaware of any Palmer PD document referred to as a "Statement of Property Loss Report"; and (6) Calvert noted the address listed in the report, "423 S Valley Way," was slightly incorrect, as in the official Palmer PD letterhead there is a period after "S."

92.     On August 24, 2017, at 6:05pm EDT, the DeMures faxed a 9-page claim form to AMEX requesting Purchase Protection Benefit reimbursement reported as "items were in a bag and accidentally left outside vehicle in parking lot of grocery store" in the Fred Meyer parking lot in Palmer, Alaska. The total amount claimed for Chris DeMure's AMEX card number 3723 272364 03009 was $5,659.79. In addition to the claim, a copy of the aforementioned falsified PPD police report for incident "17-3725" was submitted.

93.     On August 24, 2017, the DeMures faxed three claim forms ranging in length from nine to 13 pages each to AMEX requesting Purchase Protection Benefit reimbursement regarding items that he claimed to have lost in the July 9, 2017, in Palmer, Alaska, incident. Their email address, ctdemure@gmail.com, was listed on the coversheet. In those documents, the DeMures described the circumstances of the July 9, 2017, incident in the parking lot of the Fred Meyer in Palmer, Alaska, in two different ways: (1) "items were in a bag and accidentally left outside vehicle in parking lot of grocery store"; and (2) "items were in a bag and accidentally left outside vehicle in parking lot of grocery store. Bag was stolen by another person." The DeMures claimed the following loss amounts for their AMEX credit cards as follows: (1) AMEX card number ending in 03009 - $5,659.79; (2) AMEX card ending in 11000 - $5,650; and (3) AMEX card ending in 71003 - $1,110.22. In addition to the claims, a copy of the aforementioned falsified Palmer PD police report for incident "17-3725" was submitted via fax each time.

LCL

Case 3:18-mj-00308-DMS Document 1 Filed 06/25/23 Page 24 of 41

94.     In their AMEX claim documentation, the DeMures stated that four bags – three North Face bags, and one Vibe 325 Crossbody bag – and their contents had been lost/stolen in the incident on July 9, 2017, at the Fred Meyer in Palmer, rather than a single small bag or backpack as he had told Palmer PD in the two July 11, 2017, calls discussed above. Also, their AMEX claims identified a number of items that Chris DeMure stated were inside the four bags, and many more items than what he reported to the Palmer PD Dispatcher and Officer Calvert on July 11, 2017.

95.     As to most of the receipts the DeMures submitted for this incident, all items purchased on each receipt were claimed in their entirety as being lost in the July 9, 2017, incident. For instance, a receipt for 12 items purchased at the Arizona Biltmore hotel in Phoenix, Arizona, was submitted. The purchase was made on May 27, 2017, totaling $473.22. The DeMures claimed to AMEX that all 12 items were misplaced/stolen on July 9, 2017. In addition to the purchase price on the claimed receipts, the DeMures also include sales tax and shipping and handling into the loss value. The claim also included a receipt from REI in Anchorage for six items purchased on July 8, 2017. The DeMures claimed all six items were misplaced/stolen on July 9, 2017. Those items were a jacket, two wallets, and three bags, totaling $483.85. In all, the DeMures' claims for this incident included five additional receipts from which all items were reported stolen at the same time. The dates on all submitted receipts ranged from April 30, 2017, to July 8, 2017. The DeMures' claims with AMEX totaled $12,903.86, for 38 separate items.

96.     According to AT&T geolocation records, cellular telephone numbers 910-587-8785 and 910-578-8537, which are both subscribed to by Chris DeMure. Cellular telephone number 910-587-8785 is known to be used by Chris DeMure. Cellular telephone number 910-587-8537 is known to be used by Tina DeMure. The records indicated that on July 9, 2017, neither of the DeMures' AT&T cellular phones were located in Palmer. This investigation has shown that when cellular telephone number 910-587-8537 (used by Tina DeMure) accesses WiFi to either make a call or send

Case 3:18-mj-00308-DMS Document 1 Filed 06/25/23 Page 25 of 41

a SMS, the user (Tina DeMure), may be accessing the DeMures' home WiFi network.  As noted above, the DeMures reside at 1210 **Tomahawk Dr., Joint Base Elmendorf-Richardson (JBER), Alaska.**

| Date | Time (AKDT) | Cell # | Method | Approx. Location |
|---|---|---|---|---|
| 07/09/17 | 7:55am | 910-578-8785 | SMS | 5th & Richardson, Joint Base Elmendorf-Richardson, AK |
| 07/09/17 | 8:03am | 910-578-8785 | SMS | Northbound Glenn Hwy, near Arctic Valley exit Joint Base Elmendorf-Richardson, AK |
| 07/09/17 | 8:04am | 910-578-8785 | SMS | Northbound Glenn Hwy, near Arctic Valley exit Joint Base Elmendorf-Richardson, AK |
| 07/09/17 | 9:17am | 910-578-8537 | SMS | WiFi (Unk) |
| 07/09/17 | 11:31am | 910-578-8537 | SMS | WiFi (Unk) |
| 07/09/17 | 1:24 pm | 910-578-8785 | SMS | 5th & Richardson, Joint Base Elmendorf-Richardson, AK |
| 07/09/17 | 1:34pm | 910-578-8537 | Voice | WiFi (Unk) |
| 07/09/17 | 1:35pm | 910-578-8537 | Voice | WiFi (Unk) |
| 07/09/17 | 7:20pm | 910-578-8537 | SMS | WiFi (Unk) |
| 07/09/17 | 8:32pm | 910-578-8537 | SMS | WiFi (Unk) |
| 07/09/17 | 8:38pm | 910-578-8537 | Voice | WiFi (Unk) |
| 07/09/17 | 8:38pm | 910-578-8785 | Voice | Davis Hwy & 1st, Joint Base Elmendorf-Richardson, AK |

LCL

Case 3:18-mj-00308-DMS Document 1 Filed 06/25/23 Page 26 of 41

97.     In the fall of 2017, AMEX notified the FBI of possible fraudulent activity by the DeMures. Over the course of the following months, the FBI maintained contact with Peter Grimm, Global Security Investigations, Southern & Western United States with AMEX. To provide the FBI with additional time to investigate, the FBI asked AMEX to make small gradual payments on the DeMures'claims for the July 9, 2017, Palmer misplaced/stolen bag incident. Accordingly, AMEX credited the DeMures credit cards as follows: (1) on December 18, 2017, AMEX reimbursed Chris DeMure's card number 3767 397217 71003 for $1,110.22 to claim #10321996; (2) on February 6, 2018, Grimm and AMEX authorized a payment for reimbursement to Chris DeMure's card number 3723 272364 03009 for $5,659.79 to claim #10321865; and (3) on February 6, 2018, Grimm and AMEX authorized an additional payment for reimbursement to Chris DeMure's card number 3712 457001 11000 for $5,650 dollars to claim #10321859.

### Stolen Bag – July 28, 2017 – Los Angeles, California

98.     In mid-July 2017, the DeMures took a vacation to Fiji. On the return trip, they stopped in Los Angeles, California. The DeMures filed claims with both USAA and AMEX related to a lost or stolen bag, which occurred while they were in Los Angeles on July 28, 2017.

99.     On July 30, 2017, Los Angeles Police Department (LAPD) Officer Moreno (officer #42323) received a telephone call from Chris DeMure reporting lost property. Chris DeMure told Officer Moreno that he "lost his black bag with miscellaneous items in the area of Hollywood and Vine on 7/28/2017 between the hours of 1100-1700 hrs." Chris DeMure later provided Officer Moreno with an itemized list of stolen property, which included one black bag, two Rolex watches, and two pearl strand necklaces, with a value totaling approximately $87,570.

100.     On July 31, 2017, Chris DeMure wrote a message to USAA Claims Representative Dominika Kaszuba via the USAA system stating in part, "I wanted to include the paperwork that I

Case Case 3:18-mj-00308-DMS Document 1 Filed 06/25/23 Page 27 of 40 of 41

have for the two pearl strands. I also included the receipt from REI for the black bag; it is only about $70."

101.  As to the black bag from REI, Chris DeMure provided USAA with a REI purchase summary that listed a purchase number of 8190, and documented the purchase of a black Vibe 325 Crossbody bag from REI using Chris DeMure's AMEX card ending in 1003 in Anchorage, Alaska, on July 8, 2017. That item matches the description of the bag that Chris DeMure claimed was misplaced/stolen in Palmer, Alaska, on July 9, 2017, and included the same transaction number (8190) as the receipt that Chris DeMure submitted to AMEX in support of his claim related to that incident in Palmer.

102.  In the conversation with USAA Claims Representative Kaszuba on the USAA system about the pearls, Chris DeMure wrote: "I actually used two different AMEX cards for this purchase - $10,712.84 and $4,591.65 – and included the snapshots from my AMEX account to show the purchase. Overall, this strand was $15,304.49." Chris DeMure followed up his message to Kaszuba with, "it means a lot as I get ready to head to Afghanistan in a couple weeks."

103.  On August 3, 2017, USAA referred the DeMures' claim to SIU; however, the following day, SIU declined further involvement into the claim.

104.  On August 16, 2017, USAA Claims Representative Kaszuba wrote in reference to the two Rolex watches:

> "Our claim replacement services are able to order both watches for you, they just need to know if that is the way you would like to go. They advised 4-6 weeks for delivery and need to confirm the dial color for 40 mm watch, was it a basic dial? Both the orders are special non-returnable order, but if you decide to cash out on the watches the settlement would be as follows: $33,756.00 for 31mm diamond dial Oyster, and $26,369.00 for 40mm Oyster Perpetual Day-Date."

105.  The following day, Chris DeMure replied:

> "Hi Dominika…we are in a series of VTCs before we head to Afghanistan in a couple weeks. I spoke to my wife, Tina, and she asked if we could hold off on

LCL

Case 3:18-cr-00080-SLG Document 1 Filed 05/23/23 Page 28 of 41

getting the watches now and receive the funds instead. With me departing later this month to Afghanistan for nearly a year, we did not want to have watches laying around while I am gone and she heads back and forth to Chicago. Also, we just found out that we are moving to Europe once I get back. We planned to head to the Rolex headquarters in Switzerland and purchase the watches then."

106.  On August 23, 2017, an electronic funds transfer payment for $79,609 dollars was issued to the DeMures, to be available within 1-2 business days.

107.  On August 25, 2017, Chris DeMure wrote a personal check (#1364) drawn on the DeMures' joint USAA checking account (#118750186) to Community Bank, N.A. for $36,855.91. This payment was applied to a vehicle loan held through Community Bank, N.A. The vehicle this payment was applied to was a black-colored 2016 Chevrolet Suburban, VIN #1GNSKJKC7GR100285, purchased by the DeMures on July 18, 2016, from R.M. Burritt Motors, Inc. in Oswego, NY, for $69,322. The check for $36,855.91 cleared Community Bank, N.A. on August 29, 2017, and payed off the remainder of the vehicle loan.

108.  TransUnion, a credit reporting company, advised that an automobile loan held through Bank of America (loan #63010040697690) for a 2016 Audi A7 was opened in April 2016 with a high credit value of $56,000, and closed in August 2017. USAA, indicated that an Automated Clearing House (ACH) debit charge of $32,391.99 was made by the DeMures online to Bank of America on August 28, 2017. On August 29, 2017, Bank of America issued an overpayment check for account #63010040697690 for $15.70 to Christopher J. DeMure, 1210 Tomahawk Dr., Joint Base Elmendorf-Richardson, Alaska 99505.

109.  In summary, on August 23, 2017, the DeMures received the $79,609 insurance payout from the Los Angeles incident to their USAA joint checking account (ending in 0186). Two-days later, on August 25, 2017, the DeMures made the final payment on their 2016 Chevrolet Suburban automobile loan. Five-days after receiving the insurance payout from USAA, on August 28, 2017, the DeMures made what appears to be the final payment on their 2016 Audi A7 loan to Bank of

LCL

Case 3:18-mj-00308-DMS   Document 1   Filed 05/23/23   Page 29 of 41

America. (The DeMures receipt of a $15.70 overpayment check suggests that their Bank of America automobile loan was paid in full.)

110.    In addition to the USAA claim, the DeMures also filed four parallel claims with AMEX for the bag that was purportedly misplaced/stolen in Los Angeles on July 28, 2017.

111.    On September 6, 2017, the DeMure's faxed at least four different claims to AMEX ranging in size from 7 to 11 pages in length, requesting Purchase Protection Benefit reimbursement for the following items: (1) a Rolex watch purchased on May 26, 2017, from Robert Wesley Jewelers for $30,700; (2) a black pearl necklace; and (3) a light colored pearl necklace (paid for with two different AMEX cards); and (3) a Rolex watch purchased on May 18, 2017, from Stein Diamonds in the amount of $37,000. All of these claims were distributed over four different AMEX cards.

112.    According to AT&T geolocation records, both of the cellular telephone devices described above, which were subscribed by Chris DeMure and used by Chris and Tina DeMure, were located in Los Angeles, CA, on July 28, 2017.

113.    In January and February 2018, FBI was in regular contact with Grimm from AMEX. Grimm directed Shelley White, Sr. Fraud Analyst SIU from AMEX, to exclusively communicate with Chris DeMure via email. White's email signature line notes that she is a fraud analyst.

114.    On February 5, 2018, Chris DeMure sent the following email to White from his military email account (christopher.j.demure.mil@mail.mil): "I sense that something is wrong, or that [*sic*] might be confusion. Please let me know if I can assist, or if the claims should be cancelled." The two outstanding claims (#10321859 and #10321865), from the Palmer, AK misplaced/stolen bag incident, were reimbursed the following day at your affiant's request.

115.    On February 12, 2018, Chris DeMure emailed AMEX fraud analyst White from christopher.j.demure.mil@mail.mil: "I sense that something is wrong, or there might be confusion.

LeL

Case 3:18-mj-00308-DMS Document 1 Filed 06/25/23 Page 30 of 41

Please let me know if I can assist, or if the claims should just be cancelled. As mentioned, I have been out of the loop since the summer and believe the following claims are still active." Chris DeMure then listed the four outstanding claims from the misplaced/stolen bag in Los Angeles.

116.    On February 20, 2018, at the direction of your affiant, Grimm forwarded the following email verbiage to White for her to forward onto Chris DeMure:

> "Dear Mr. Christopher DeMure, thank you for your inquiries regarding the below insurance claims.  Due to the relatively high volume of claims made by you we are requesting that you submit the following two items to us: a personal statement regarding the circumstances surrounding your losses for the below claims; a legible copy of the police report you filed.  We are hoping to resolve your claims as soon as possible and would appreciate a prompt response.  If you happen to have located the missing items and/or you would like to cancel these claims with us please respond to this email stating so."

117.    The following claim numbers were listed at the bottom of the email: #10331906, #10331908, #10331910, and #10331912.

118.    Later on February 20, 2018, Chris DeMure sent the following reply from christopher.j.demure.mil@mail.mil:

> "As mentioned, I have been in Afghanistan since this summer- shortly after these were filed.  Although I do not have the details of these claims, I believe these items were located/replaced after digging into this with my wife.  As such, please go ahead and cancel all four claims.  Thank you for your time.  LTC Chris DeMure, Commander, Task Force 3 GERONIMO, Bagram Airfield, Afghanistan."

### *MONEY LAUNDERING*

119.    Under 18 U.S.C. § 1957(f)(1), a "monetary transaction" means, among other things, the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument by, through, or to a financial institution (as defined in [18 U.S.C. §] 1956)."

LCL

Case 3:18-mj-00308-DMS   Document 1   Filed 05/23/23   Page 31 of 41

120.   USAA is a "financial institution" under 18 U.S.C. § 1957(f)(1) and 31 U.S.C. § 5312, given, among other things, that its deposits are insured by the Federal Deposit Insurance Corporation.

121.   A violation of either 18 U.S.C. § 1341 (Mail Fraud) or 18 U.S.C. § 1343 (Wire Fraud) constitutes "specified unlawful activity" for purposes of 18 U.S.C. § 1957, pursuant to 18 U.S.C. § 1956(c)(7)(A) and 18 U.S.C. § 1961(1).

122.   Under 18 U.S.C. § 1956(h), it is a crime for any person to conspire to commit any offence defined in 18 U.S.C. § 1956(h) or 18 U.S.C. § 1957.

123.   On August 24, 2017, an electronic funds transfer in the amount of $79,609 from USAA was deposited into the DeMures' USAA checking account ending in 0186.  This $79,609 transfer was the insurance payment for the DeMures' claim related to the purported bag theft in Los Angeles on July 28, 2017, discussed above.

124.   At the time the $79,609 derived from the DeMures' fraudulent Los Angeles insurance claims was deposited into that account, their account balance was $11,905.76. After the $79,609 was deposited into the DeMures' USAA checking account ending in 0186, the account balance was $91,124.46.

125.   On August 25, 2017, Chris DeMure wrote a personal check (#1364) drawn on their personal USAA checking account ending in 0186 to Community Bank, N.A. for $36,855.91.  This payment was applied to a vehicle loan held through Community Bank, N.A.  Specifically, the payment was applied to a black 2016 Chevrolet Suburban, Vehicle Identification Number (VIN) 1GNSKJKC7GR100285, purchased by the DeMures on July 18, 2016, from R.M. Burritt Motors, Inc. in Oswego, NY, for $69,322.  The check for

LCL

Case 3:18-mj-00308-DMS Document 1 Filed 06/25/23 Page 32 of 41

$36,855.91 cleared USAA on August 30, 2017, and paid off the remainder of the vehicle loan. Prior to the final payoff on the Suburban, the DeMures made regular monthly payments to Community Bank, N.A. from his USAA account ending in 0186 (into which all of the proceeds from the DeMures' fraudulent USAA insurance claims were deposited).

126.    TransUnion, a credit reporting company, advised that an automobile loan held through Bank of America, ending in loan number 7690, for a 2016 Audi A7 was opened by the DeMures in April 2016 with a high credit value of $56,000, and was closed in August 2017.

127.    On August 28, 2017, USAA records show that the DeMures caused USAA to initiate an Automated Clearing House (ACH) debit charge of $32,391.99 to Bank of America. On August 29, 2017, Bank of America issued an overpayment check for the Audi A7 loan (loan number ending in 7690) for $15.70 to the DeMures, suggesting that the DeMures' Bank of America automobile loan was paid in full.

128.    In summary, on August 24, 2017, USAA deposited the $79,609 insurance payout from the Los Angeles incident to the DeMures' USAA joint checking account (ending in 0186). On August 25, 2017, the DeMures made the final payment on their 2016 Chevrolet Suburban automobile loan by writing a check for $36,855.91 that was drawn on his USAA bank account on August 30, 2017. On August 28, 2017, the DeMures made what appears to be the final payment on his 2016 Audi A7 loan to Bank of America via ACH. For clarity's sake, no deposits or transfers were into the DeMures' USAA account ending in 0186 after the $79,609 insurance payment was deposited on August 14, 2017, and when the

Case 3:18-mj-00308-DMS Document 1 Filed 06/25/23 Page 33 of 41

DeMures paid off their car loan for their Audi A7 on August 28, 2017 (i.e., the $36,855.91 debit charge).

129.     On May 19, 2018, FBI identified the aforementioned 2016 Chevy Suburban as being listed for sale online on Craigslist.org and Facebook Marketplace for approximately $58,000. A Confidential Human Source (hereinafter "CHS") was tasked to make contact with Tina DeMure regarding the possible purchase of the DeMure's 2016 Chevy Suburban. During the meeting, which occurred on May 20, 2018 in Eagle River, the CHS gave, and Tina DeMure accepted, $1,000 USD denominated in 10 (ten) one hundred ($100) dollar bills to hold the vehicle for the CHS so that a mechanic could examine it.[2] Tina DeMure agreed to remove the listing and hold the Suburban until at least Thursday May 24, 2018.

*VEHICLE FINANCIAL TRACING*

130.     As stated previously (paragraph 15, above) in this Affidavit, USAA Checking account ending in 0186 was the deposit account that received the USAA and AMEX insurance claim payments. Further, financial analysis also determined USAA checking account ending in 0186 disbursed loan payments to Bank of America and Community Bank for two vehicles purchased by Chris and Tina DeMure.

131.     Financial analysis determined during the period January 27, 2016 and September 22, 2017 (time period when vehicles purchased/paid off), USAA Checking account ending in 0186 received total deposits of $480,691.73, of which $272,601.21 represent USAA and/or AMEX insurance claim payments. By depositing the fraudulent insurance claim proceeds into USAA

---

[2] The 10 one hundred dollar bills' respective serial numbers are as follows: LB63046783N; LF20853825G; LK26338974D; LG07849219C; LD54161301B; JB99093734B; MB04161987C; LK33305634B; LL90567910D; and LA31847378B.

Checking account ending in 0186, the DeMure's co-mingled fraud proceeds with other funds in the account. The USAA and/or AMEX insurance claim payments represent approximately 57% of the total deposits during this period. The financial analysis of USAA and/or AMEX insurance claim payments of $272,601.21 include the following deposit detail:

   a. Six Automated Clearing House (ACH) Credit deposits from USAA in aggregated amount of $162,111.25 [ACH is an electronic network for financial transactions in the United States],
   b. One mail deposit from USAA in amount of $100,509, and
   c. One check deposit from AMEX in the amount of $9,980.96.

132.    Further, certain suspected fraudulent USAA insurance claim payments deposited into USAA Checking account ending in 0186 can be traced directly to regular monthly payments, as well as significant loan payments, on the vehicle loans. These loan payment transaction are detailed further in this Affidavit.

133.    The investigation has determined that Chris DeMure is the registered owner of a 2016 Audi A7, VIN WAU2MBFC8GN014796, bearing State of Washington plate AZX5607, and a 2016 Chevrolet Suburban 1500, VIN 1GNSKJKC7GR100285, bearing State of Alaska plate JEL252.

134.    On April 12, 2018 the Audi A7 was observed at 2401 E. 42nd Ave, Anchorage, Alaska. This address is understood to be the place of Tina DeMure's employment.

135.    State of Washington vehicle registration check confirms the Audi A7, VIN WAU2MBFC8GN014796, Washington license AZX5607 is registered to Christopher J. DeMure, 1615 W. 95th Ave, Crown Point, Indiana.  Christopher DeMure utilized this address on his Community Bank loan application as his permanent address.

136.    On April 22, 2018 the Chevrolet Suburban 1500 was observed at the DeMure's residence at 1210 Tomahawk Dr, Joint Base Elmendorf-Richardson, Alaska.

Case 3:18-mj-00308-DMS Document 1-1 Filed 05/23/18 Page 35 of 41

137.     Alaska vehicle registration check confirms the 2016 Chevrolet Suburban 1500, VIN

1GNSKJKC7GR100285 is registered to Christopher J. DeMure, 1210 Tomahawk Dr, Joint Base

Elmendorf-Richardson, Alaska.

<em><u>2016 AUDI A7, VIN WAU2MBFC8GN014796</u></em>

138.     On or about April 20, 2016 Chris DeMure purchased a **2016 Audi A7, VIN

WAU2MBFC8GN014796**. The vehicle purchase balance was financed with Bank of America loan

number 63010040697**690 (7690)**, in the principal amount of $56,000. A down payment of the

vehicle purchase was made with USAA official check in the amount of $10,000.

139.     During the period May 31, 2016 through March 3, 2017, Chris and Tina DeMure

made sixteen (16) Bank of America monthly loan payments, each in the amount of $977.14, toward

the loan on the Audi A7 from USAA Checking account ending in 0186. The monthly loan payments

to Bank of America totaled $15,634.24.

140.     On October 4, 2016, the balance in the USAA Checking account ending in 0186 was

$5,387.74. On October 5, 2016, $31,477.34 was ACH Credit deposited into USAA Checking

account ending in 0186. The source of the deposit was a result of a USAA Insurance Claim

settlement (paragraph 70 above) resulting from the DeMure's insurance claim to USAA for the

Louisville, KY U-Haul burglary resorted to Louisville PD on July 20, 2016. Thereafter, in November

2016 Chris and Tina DeMure made two significant ACH Debit withdrawals from USAA Checking

account ending in 0186 in the amount of $5,000 and $4,000 as loan payments on the Bank of

America loan **7690**. But for the USAA insurance claim ACH Credit deposit of $31,477.34 made

October 5, 2016, the balance in the account would not be sufficient to make the two significant

November 2016 loan payments.

141.     On August 23, 2017 the balance in the USAA Checking account ending in 0186 was

$11,905.76. On August 24, 2017, $79,609 was ACH Credit deposited into USAA Checking account

LCL

ending in 0186. The source of the deposit was a USAA Insurance Claim settlement (paragraph 106 above) resulting from the DeMure's insurance claim to USAA for the Los Angeles reported lost or stolen to Los Angeles PD on July 28, 2017. Thereafter, on August 28, 2017 Chris and Tina DeMure made a significant ACH Debit withdrawal from USAA Checking account ending in 0186 in the amount of $32,391.99 as the final payment on Bank of America loan **7690**. But for the USAA insurance claim ACH Credit deposit of $79,609 made August 24, 2017, the balance in the account would not be sufficient to make the significant August 2017 Bank of America loan payment. This payment satisfied the balance of the Bank of America loan **7690** for the **2016 Audi A7, VIN WAU2MBFC8GN014796**.

### *2016 CHEVROLET SUBURBAN 1500, VIN 1GNSKJKC7GR100285*

142.     Based upon records provided by Community Bank N.A., (hereinafter Community Bank) on or about July 18, 2016 Chris and Tina DeMure purchased a **2016 Chevrolet Suburban 1500, VIN 1GNSKJKC7GR100285** from R.M. Burritt Motors, Inc., in Oswego, NY. The vehicle purchase was financed by Community Bank, loan number 2190784**934** (**4934**), in the principal amount of $68,402. The records reflect the loan was paid in full on August 29, 2017.

143.     During the period September 2, 2016 through April 3, 2017, Chris and Tina DeMure made eight (8) Community Bank loan payments, each in the amount of $1,034.06, from USAA Checking account ending in 0186. The monthly loan payments from USAA Checking account ending in 0186 to Community Bank totaled $8,272.48.

144.     On March 27, 2017, the balance in USAA Checking account ending in 0186 was $18,150.89. On March 28, 2017, $100,509 USAA check number 0017854022 was mail deposited into USAA Checking account ending in 0186. The source of the mail deposit was a USAA Insurance Claim settlement (paragraph 59 above) resulting from the DeMure's insurance claim to USAA for the Louisville, KY U-Haul burglary (Jewelry) reported to Louisville PD on July 20, 2016.

LCL

Case Case 3:18-mj-00308-DMS Document 1 Filed 06/25/23 Page 37 of 41

Thereafter, on April 4, 2017 Chris and Tina DeMure made a significant ACH Debit withdrawal from USAA Checking account ending in 0186 in the amount of $25,000 as a payment on Community Bank loan **4934** for the 2016 Chevrolet Suburban. But for the USAA insurance claim ACH Credit deposit of $100,509 made March 28, 2017, the balance in the account would not have been sufficient to make the significant April 2017 Community Bank loan payment.

145.    On August 23, 2017 the balance in the USAA Checking account ending in 0186 was $11,905.76. On August 24, 2017, $79,609 was ACH Credit deposited into USAA Checking account ending in 0186. [The loss was previously detailed in paragraph 106 above]. Thereafter, on August 28, 2017 check #1364, payable to Community Bank in the amount of $36,855.91 was issued from USAA Checking account ending in 0186 as the final payment on Community Bank loan **4934**. But for the USAA insurance claim ACH Credit deposit of $79,609 made August 24, 2017, the balance in the account would not be sufficient to make the significant August 2017 Community Bank loan payment. This payment satisfied the balance of the Community Bank loan **4934** for the **2016 Chevrolet Suburban 1500, VIN 1GNSKJKC7GR100285**.

146.    In all, Affiant traced payments from USAA Checking account ending in 0186 in the total amount of $70,128.39 toward the purchase of the 2016 Suburban.

### CONCLUSIONS

147.    Based on the forgoing, probable cause exists to believe that the **2016 Audi A7, VIN WAU2MBFC8GN014796** and **2016 Chevrolet Suburban 1500, VIN 1GNSKJKC7GR100285** represent property traceable to proceeds of violations of 18 U.S.C. §§ 1341 (mail fraud), and 1343 (wire fraud) (both SPECIFIED UNLAWFUL ACTIVITIES as defined 18 U.S.C. § 1956 (a)(1)(c)(7)) and 1957 (money laundering), and subject to forfeiture to the United States under 18 U.S.C. §§ 981(a)(1)(A) and (C), as well as 18 U.S.C. § 982(a)(1) and (a)(2).

Case 3:18-mj-00308-DMS   Document 1   Filed 05/23/18   Page 38 of 41

148.   Evidence supports the conclusion that the DeMures engaged in a scheme to defraud

USAA and AMEX through filing false insurance claims and receiving proceeds of those fraudulent

claims. The DeMures received the SPECIFIED UNLAWFUL ACTIVITY proceeds through

electronic ACH deposits and through the mail and that these proceeds were thereafter deposited into

USAA Checking account ending in 0186. The monthly payments and payoff balances for these

target vehicles were paid from USAA Checking account ending in 0186. These vehicles, as property

traceable to violations of the SPECIFIED UNLAWFUL ACTIVTY and involved in a transaction in

violation of 18 U.S.C. § 1957, are subject to forfeiture to the United States under 18 U.S.C.

§ 981(a)(1)(C) and 18 U.S.C. § 982(a)(1) and (a)(2).

149.   The financial analysis identified certain significant monetary transactions in

criminally derived property of a value greater than $10,000 which were derived from SPECIFIED

UNLAWFUL ACTIVITIES, and traceable to loan payments for purchase of vehicles discussed

herein and are therefore subject to forfeiture to the United States under 18 U.S.C. § 981(a)(1)(A) and

18 U.S.C. § 982.

### REQUEST FOR SEALING OF MATTER

150.   I request that the Court order scaling this case until further order of the Court. The

documents filed in the case discuss an ongoing criminal investigation that is neither public nor

known to all the targets of the investigation. Accordingly, there is good cause to seal these

documents because their premature disclosure may give targets an opportunity to destroy or tamper

with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the

investigation.

//

//

//

*3:18-mj-00308-DMS*                         39 of 40

Case 3:18-cr-01080-BAS Document 1 Filed 06/25/23 Page 39 of 41

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Signed: **Signature Redacted** Date: 05/23/18
Tyler Vose, Special Agent

Subscribed and sworn to before me this 23rd day of May, 2018.

/S/ LESLIE C. LONGENBAUGH
U.S. MAGISTRATE JUDGE
SIGNATURE REDACTED
U.S. MAGISTRATE JUDGE